UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

FILED ELECTRONICALLY

| | |
|---|---|
| AMERICAN HOME HEALTHCARE SERVICES, INC.<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>FLOYD MEMORIAL HOSPITAL AND HEALTH SERVICES a/k/a/ THE HEALTH AND HOSPITAL CORPORATION OF FLOYD COUNTY and BAPTIST HEALTHCARE SYSTEM, INC.<br><br>　　　　　　　Defendants<br><br>SERVE:<br><br>The Board of Commissioners of the County of Floyd<br>311 West First Street<br>New Albany, IN 47150<br><br>Floyd County, Indiana<br>311 West First Street<br>New Albany, IN 47150<br><br>Janet M. Norton, Registered Agent<br>2701 Eastpoint Parkway<br>Louisville, KY 40223 | Case No. 3:17-CV-48-JHM<br><br>VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>Jury Trial Demanded |

## INTRODUCTION

1.　　This is an action to redress injuries caused by tortious and anti-competitive conduct specifically intended to monopolize home health agency referrals from Floyd Memorial Hospital and to interfere with patients' relationships with their existing home health providers.

2. The Defendants, who are the present and former owners of a short-term acute care hospital in Floyd County, Indiana, have used, and continue to use, their control over the discharge planning process at Floyd Memorial Hospital to benefit their captive home health agency at the expense of the Plaintiff and other competitors. In doing so, the Defendants have acted in violation of Medicare rules governing patient choice.

3. The Plaintiff, an independent, locally-owned home health provider, seeks damages suffered as a result of the Defendants' anticompetitive and tortious conduct, and injunctive relief to ensure that patient choice is the determining factor in home health referrals made in the future.

## PARTIES

4. Plaintiff American Home Healthcare Services, Inc. ("AHHS") is an Indiana corporation with its principal office located at 1035 Wall Street, Suite 104-C1, Jeffersonville, IN 47130.  AHHS is a licensed provider of home health services.

5. Defendant Floyd Memorial Hospital and Health Services a/k/a The Health and Hospital Corporation of Floyd County ("Floyd Memorial Hospital") at one time owned and operated a short-term acute care county hospital with a principal place of business located at 1850 State Street, New Albany, Indiana 47150.  Floyd Memorial Hospital was established by the Floyd County Commissioners. Upon information and belief, Floyd Memorial Hospital was governed by a governing board consisting of members appointed by the Floyd County Commissioners.

6. Until October 1, 2016, Floyd Memorial Hospital owned and operated Floyd Memorial Hospital Home Health ("Floyd Home Health").

7. On or about October 1, 2016, Floyd Memorial Hospital sold its assets, including Floyd Home Health, to Baptist Healthcare System, Inc. for $75 million paid at closing plus an additional $61 million payable over ten years. Upon information and belief, $5 million has been

spent on general county budget needs and the balance of the proceeds of the sale have or will be invested with the Community Foundation of Southern Indiana or elsewhere.

8.      Defendant Baptist Healthcare System, Inc. ("Baptist Healthcare") is a Kentucky corporation with its principal office located at 2701 Eastpoint Parkway, Louisville, KY 40223. Baptist Healthcare has for many years operated a general acute care hospital in Jefferson County, Kentucky. On or about October 1, 2016, Baptist Healthcare acquired the assets of Floyd Memorial Hospital, including Floyd Home Health. Baptist Healthcare now operates the aforementioned Floyd entities as Baptist Health Floyd and Baptist Health Home Care Floyd.

9.      As a matter of law, Defendant Baptist Healthcare is the successor-in-interest to Floyd Memorial Hospital for purposes of antitrust and tort liability because Defendant Baptist Healthcare's acquisition of Floyd Memorial Hospital's assets was a de facto merger with Floyd Memorial Hospital, the post-acquisition operations are a mere continuation of the pre-existing operations of Floyd Memorial Hospital, because there is substantial continuity post-acquisition, and/or because Baptist Healthcare expressly or impliedly assumed such liabilities in connection with the acquisition.

10.     Floyd Memorial Hospital has at times relevant to the complaint conducted substantial business activities in, and derived substantial revenue from, the Commonwealth of Kentucky and this Judicial District, including specifically in connection with employing and providing staff privileges to physicians who are residents of Kentucky, sending patients into and receiving patients from the Commonwealth of Kentucky and this Judicial District, and transacting business for goods and services originating in Kentucky and this Judicial District. At all times relevant to the complaint, Baptist Healthcare has resided in, owned real property, conducted

substantial business activities in, and derived substantial revenue from, the Commonwealth of Kentucky and this Judicial District.

11. Defendant Floyd Memorial Hospital and Defendant Baptist Healthcare are collectively referred to herein as the "Defendants."

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction over this matter pursuant to 15 U.S.C. §§ 4 and 26; and 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over the state law tort claim pursuant to 28 U.S.C. § 1367.

13. The Clayton Act, 15 U.S.C. §§ 22 and 26, provides for nationwide service of process and personal jurisdiction over the Defendants in this Court. Venue is proper in this Court pursuant to 15 U.S.C. § 22 because the Defendants have each inhabited, resided and/or transacted business in this Judicial District. Venue is also proper in this Court pursuant to 15 U.S.C. § 26 and 28 U.S.C. § 1391 because this Court has personal jurisdiction over the Defendants.

## FACTS

14. Many patients who are discharged from acute care hospitals require outpatient care in the form of home health services. Many of these patients are elderly. At the time of discharge from the hospital, discharge planners employed by the hospital make the arrangements for these patients to receive home health services.

15. Home health services following a hospital discharge constitute a distinct product (the "Relevant Product"). The market for the Relevant Product is a distinct product market (the "Relevant Product Market"). There is no ready substitute for the functions provided by the Relevant Product, and these services are not reasonably interchangeable with any other product or service. The need for the Relevant Product is not determined until the time of discharge from the

hospital. The Relevant Product Market is unusual in that effective competition between providers occurs exclusively within the discharge planning process implemented on-site at the hospital. Consumers of the Relevant Product cannot practically turn elsewhere for supplies, so their choice among competing providers must be made within the discharge planning process implemented on-site at the hospital. Due to these commercial realities, Floyd Memorial Hospital is the geographic market for obtaining the Relevant Product in connection with a discharge from Floyd Memorial Hospital/Baptist Health Floyd (the "Relevant Geographic Market").

16. Until October 1, 2016, AHHS and Floyd Home Health were competitors in the Relevant Geographic Market and the Relevant Product Market. From and after October 1, 2016, AHHS and Baptist Home Health compete to provide the Relevant Product in the Relevant Geographic Market.

17. Floyd Memorial Hospital was, and Baptist Health Floyd now is, the dominant short-term acute care hospital facility located in Southern Indiana. Based on publicly available data, as of the end of 2015, Floyd Memorial Hospital had 211 staffed beds, 58,289 patient days, 13,292 discharges, and patient revenue of $1,021,530,656. Its two short-term acute care hospital competitors in Southern Indiana – which are both located in adjacent Clark County – are Clark Memorial Hospital and Kentuckiana Medical Center.

18. Based on publicly available data, in 2015, Floyd Memorial Hospital had more than double the patient revenue of Clark Memorial Hospital and more than eight times the revenue of Kentuckiana Medical Center. In that year, Floyd Memorial Hospital discharged more Medicare patients than Clark Memorial Hospital and Kentuckiana Medical Center combined.

19. Based on publicly available data, in 2013, Floyd Home Health had a census of 2,024 home health patients, 1,186 of which were Medicare patients, 110 Medicaid, and 728 designated

as "other" (presumably private insurance or private pay). In 2014, the census counts were 1,969 (total), 1,288 (Medicare), 94 Medicaid, and 587 (other). In 2015, the census counts were 2,134 (total), 1,346 (Medicare), 101 (Medicaid), and 687 (other).

20. As set forth above, Medicare patient referrals from Floyd Memorial Hospital to Floyd Home Health, which result in higher reimbursement rates to the provider than Medicaid patients, have been trending upward, while less profitable Medicaid patient referrals remain flat.

21. A much higher percentage of charges for home health services are collected as payments compared with what is typical of other lines of business. Based on publicly available data, in 2015, Baptist Health Floyd received home health payments from Medicare totaling $10,874,908 on total charges of $11,658,920.

22. The Defendants' hospital discharge planners are the source of consumer referrals to suppliers of the Relevant Product in the Relevant Geographic Market. Based on available data, in 2015, Floyd Memorial Hospital discharge planners were responsible for an estimated 914 Medicare referrals to Floyd Home Health and other home health agencies. Referrals of Medicaid recipients and patients with private insurance were also made.

23. Consumers of the Relevant Product are typically elderly and often very ill. This creates a situation in which their choices can easily be influenced, or even made for them, by third-parties. For this reason, discharge planners and physicians employed by the Defendants have had, and continue to have, the ability to steer patients to their in-network home health agency, with a resulting financial benefit to the Defendants.

24. As a condition of participation in the Medicare program, hospitals are legally required to provide their patients with the freedom to choose among home health providers and to respect patient preferences. See 42 CFR 482.43 (Condition of Participation; Discharge Planning);

42 U.S.C. § 1395x(ee). Under Medicare rules, hospitals are also required to disclose in the discharge plan the hospital's financial interest with respect to a home care provider to which a patient is referred. See id.

25. Based on available data, in 2015, no less than 64% of the Medicare patients discharged from Floyd Memorial Hospital to a home health agency were referred in-network to Floyd Home Health. A total of 30.2% of home health referrals were spread among six other home health agencies, with none of these agencies receiving more than 9.1%. The remaining 5.5% of referrals were spread between home health agencies which each received 10 or fewer referrals in 2015.

26. Upon information and belief, a significant majority of both Medicare and private insurance patients who are in need of the Relevant Product when discharged from Floyd Memorial Hospital/Baptist Health Floyd have received and continue to receive these services from the Defendants' captive home health agency. Upon information and belief, total self-referrals now constitute no less than 70% of the total referral base. That would leave no more than 30% of such patient volume to be spread among all of the other home health agencies.

27. Floyd Memorial Hospital has created a two-page hand-out labeled "For Distribution to Patients." The hand-out lists a number of home health agencies serving various Indiana counties. On the "revised 2013" version, Floyd Home Health is listed first. On the second page, at the end of the list of agencies, the handout discloses that Floyd Memorial Hospital owns Floyd Memorial Home Health. This brief disclaimer would not be seen by a patient who does not turn to the second page and, in any event, is not conspicuous enough to be noticed and understood by the typical consumer of the Relevant Product.

28. Despite being listed third on the Floyd Memorial Hospital hand-out, AHHS receives very few patients from the Defendants, barely double digit numbers annually. Based on available data, in 2015, AHHS received 11 referrals of Medicare patients from Floyd Memorial Hospital, or 1.3% of total referrals. The few patients AHHS receives from the Defendants tend to reside far away and/or they are Medicaid patients, who are less attractive to any provider from a financial standpoint. Upon information and belief, the low volume of referrals and less desirable patient mix experienced by AHHS is not the result of random chance or unfettered patient choice but is instead a product of undue influence in the discharge planning process.

29. The distribution of home health referrals among competing home health agencies cannot be explained by the quality of the services provided by the home health agencies competing in the Relevant Geographic Market. For example, there is little or no positive correlation between the quality of home health providers, as reflected in Medicare star ratings, and the proportion of referrals received. Because the vast majority of home health patients present some form of government-provided or private insurance, the referral patterns also cannot be the consequence of price competition.

30. The high rate of self-referrals to the Defendants' captive home health agency is not the result of informed consent and freely exercised patient choice but, rather is the product of the Defendants' practice of intentionally steering patients to Floyd Home Health/Baptist Health Home Care Floyd, or actively disregarding patients' expressed wishes.

31. In several specific instances known to AHHS due to eye-witness reports from patients and family, the Defendants have defied patient choice by referring patients to Floyd Home Health without offering any choices, by advocating exclusively for Floyd Home Health, and/or by

8

assigning patients to Floyd Home Health despite the previously expressed desire of the patient to receive care from AHHS. These instances are not detailed herein to protect patient privacy.

32. AHHS is only aware of these instances because they involved existing patient relationships. In cases involving patients who have no pre-existing relationship with a home health provider, successful attempts to improperly steer patients to a captive home health agency are likely to go undetected. Even with respect to patients already under the care of AHHS, situations involving patients who were steered away from AHHS to Floyd Home Health/Baptist Health Home Care Floyd would go undetected unless the patient or a family member complained.

33. The Defendants have installed mechanisms into the discharge planning process which enhance the likelihood that their captive home health agency will receive patient referrals. On the drop- down menu available to physicians who use the computer system to make referrals, the only two choices have been "Floyd" and "other." Thus, in order to select any home health provider besides the Floyd entity, a physician must go through an extra step to write down or verbally specify the "other" agency which they desire to select. Physicians employed by the Defendants have been questioned by case managers as to why they would recommend that a patient use any home health agency besides Floyd Home Health. The Defendants have thereby in effect coerced physicians to refer patients to the Defendants' captive home health agency.

34. The Defendants have intentionally engaged in conduct which unduly influences elderly and vulnerable patients to select their captive home health services provider. While claiming that they do not unduly influence patient decision-making, the Defendants have resisted all reasonable suggestions for modifying the discharge process such as by fixing the drop-down menu or moving to a "rotation" referral system. The Defendants have not responded by taking any meaningful steps to correct the situation.

35. Due to the Defendants' attempts to monopolize the provision of the Relevant Product in the Relevant Geographic Market, AHHS is losing money and facing closure. AHHS is suffering antitrust injury as a result of the Defendants' efforts to destroy competition to supply the Relevant Product in the Relevant Geographic Market.

36. By self-referring a significant majority of the more favorable patient referrals under their control, and requiring all other competitors including AHHS to split the small number of remaining, less favorable referrals, the Defendants have been, and continue to be, in a position to starve the competition to a point at which competition will cease and the Defendants will hold a monopoly with respect to supplying the Relevant Product in the Relevant Geographic Market.

37. Through the same conduct, the Defendants have improperly interfered with AHHS' existing and prospective business relationships with patients, causing AHHS to lose patient relationships and the resulting revenues from the home health services which would have been provided to those patients absent the interference.

## FIRST CLAIM FOR RELIEF
**Attempted Monopolization (15 U.S.C. § 2)**

38. Plaintiff restates and incorporates by reference, as if fully set forth herein, the previous allegations in the Verified Complaint.

39. The patients discharged from Floyd Memorial Hospital/Baptist Health Home Care Floyd who require the Relevant Product (the "Floyd Patients") rationally seek these services during the discharge process. Floyd Memorial Hospital/Baptist Health Home Care Floyd has been and remains the geographic area in which Floyd Patients may rationally look for home health services. There is no location besides the discharge planning process at Floyd Memorial Hospital in which Floyd Patients can practically turn for supplies of the Relevant Product. As a result, the only area

of effective competition for these referrals is the discharge planning process within Floyd Memorial Hospital/Baptist Health Home Care Floyd.

40. Section 2 of the Sherman Act creates liability for "[e]very person who shall monopolize or attempt to monopolize…. Any part of the trade or commerce among the several States…." 15 U.S.C. § 2.

41. The Defendants have previously engaged, and continue to engage, in the afore-described anti-competitive practices with the specific intent and design to build a monopoly and/or to exclude or destroy competition with respect to supplying the Relevant Product in the Relevant Geographic Market. By failing to follow Medicare Conditions of Participation regarding patient choice, the Defendants have leveraged their ability to self-refer patients into an unfair competitive advantage over other providers of the Relevant Product competing for Floyd Patients in the Relevant Geographic Market.

42. The Defendants have excluded the Plaintiff from an essential facility, access to which is necessary to compete to provide the Relevant Product in the Relevant Geographic Market. The Defendants have excluded the Plaintiff from access to a source of referrals which is vital to the Plaintiff's competitive viability. The Defendants' intentional denial of access to this vital source of referrals has inflicted a severe handicap on their competitors and threatens to eliminate competition for the provision of the Relevant Product in the Relevant Geographic Market.

43. The Defendants' past and present monopoly control over the discharge process at Floyd Memorial Hospital/Baptist Health Home Care Floyd, coupled with their financial incentive to continue to self-refer a significant majority of patients to their captive home health agency, creates a dangerous probability of a monopoly with respect to the provision of the Relevant Product

in the Relevant Geographic Market. The Defendants have attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

44. The Defendants have exerted control over the discharge process at Floyd Memorial Hospital/Baptist Health Home Care Floyd. Competing home health agencies cannot practically or reasonably duplicate the discharge process. The Defendants deny competitor home health agencies the ability to discuss or otherwise market their Relevant Product during the discharge planning process. The Defendants could feasibly provide competitors access to the Floyd Patients during the discharge planning process so that the Floyd Patients could be educated about the other options available to them for the Relevant Product.

45. The Defendants steer discharged hospital patients into the Defendants' own home health services without offering the patients an informed or meaningful choice free from the Defendants' influence. Such actions are exclusionary and predatory acts designed to acquire and maintain a permanent monopoly over providing the Relevant Product in the Relevant Geographic Market.

46. The Plaintiff has suffered antitrust injuries in the form of lost referrals and revenues which it would have received absent the Defendants' acts of attempted monopolization. The Defendants' actions have injured both competitors and competition for the Floyd Patients, and the Plaintiff's damages flow directly from the injury to competitors and competition. The violations set forth herein have a been a material and substantial cause of injury to the Plaintiff's business and property.

47. Plaintiff has standing to pursue damages against the Defendants pursuant to Section 4 of the Clayton Act. Plaintiff is entitled to an award of treble damages and costs, including a reasonable attorney's fee.

48. Plaintiff has standing to pursue injunctive relief against the Defendants pursuant to Section 6 of the Clayton Act. Plaintiff is entitled to a permanent injunction to remedy the actual and threatened violations of the Sherman Act and to prohibit Baptist Health Floyd from engaging in attempted monopolization and any other conduct which threatens to destroy competition with respect to supplying the Relevant Product in the Relevant Geographic Market.

## SECOND CLAIM FOR RELIEF
### Tortious Interference with Contractual Relations

49. Plaintiff restates and incorporates by reference, as if fully set forth herein, the previous allegations in the Verified Complaint.

50. Plaintiff has contractual and business relationships with patients who receive home health care services from the Plaintiff. When a patient is discharged by the Plaintiff, under applicable law the patient remains a patient of AHHS for a period of 60 days after discharge.

51. The Defendants have been consciously aware of, and have had actual knowledge of, existing patient relationships between AHHS and patients who are later admitted or re-admitted to Floyd Memorial Hospital.

52. The Defendants have intentionally interfered with the Plaintiff's existing contractual relationships with patients by improperly steering them to their captive home health agency in violation of Medicare rules and in disregard for patient freedom of choice.

53. The motive behind the Defendants' interference is improper and unjustified and significantly wrongful. Defendants' interference was based on financial self-interest and a disregard for the rights of patients and the Plaintiff. The Defendants' conduct displayed malice in its disregard for Medicare rules and patient choice.

54. Defendants have caused Plaintiff to lose patients with existing business and contractual relationships to AHHS. As a proximate result of the Defendants' conduct, Plaintiff has suffered actual compensatory and special damages.

### THIRD CLAIM FOR RELIEF
### Tortious Interference with Prospective Business Advantage / Prospective Contractual Relations

55. Plaintiff restates and incorporates by reference, as if fully set forth herein, the previous allegations in the Verified Complaint.

56. Plaintiff has had a valid business expectancy that, if patient freedom of choice were respected in accordance with Medicare rules, it would receive significant additional home health care referrals from Floyd Memorial Hospital/Baptist Health Home Care Floyd.

57. The Defendants have been consciously aware of, and have had actual knowledge of, this expectancy.

58. The Defendants have intentionally interfered with the Plaintiff's expectancy by improperly steering home health patients to their captive home health agency in violation of Medicare rules and with disregard for patient freedom of choice.

59. The motive behind the Defendants' interference is improper and unjustified and significantly wrongful. Defendants' interference was based on financial self-interest and a disregard for the rights of patients and the Plaintiff. The Defendants' conduct displayed malice in its disregard for Medicare rules and patient choice.

60. Defendants have caused Plaintiff to lose patients who naturally and foreseeably would have chosen the Plaintiff in the absence of interference. As a proximate result of the Defendants' conduct, Plaintiff has suffered actual compensatory and special damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff American Home Healthcare Services, Inc. respectfully requests the following relief:

A. Trial by jury;

B. Judgment in Plaintiff's favor on the First Claim for Relief for attempted monopolization;

C. Judgment in Plaintiff's favor on the Second Claim for Relief for tortious interference with contractual relations;

D. Judgment in Plaintiff's favor on the Third Claim for Relief for tortious interference with prospective business advantage/prospective contractual relations;

E. Treble damages;

F. Plaintiff's costs and reasonable attorney's fees;

G. An injunction prohibiting further acts of attempted monopolization and requiring all actions, as ordered by the Court, which may be necessary or appropriate to ensure that there will be no further threat to destroy competition for home health referrals in the Relevant Geographic Market.

H. All other relief to which the Plaintiff may be entitled.

## VERIFICATION

After being duly sworn, I, Abdul Buridi, have knowledge concerning the matters set forth in the foregoing complaint, and do hereby verify, certify, swear, and affirm that the allegations contained in the foregoing complaint are true and accurate to the best of my information, knowledge, and belief.

*A. G. Buridi, M.D.*
ABDUL BURIDI

COMMONWEALTH OF KENTUCKY )
                          )
COUNTY OF JEFFERSON       )

The foregoing Verification was subscribed and sworn to and/or acknowledged before me by ABDUL BURIDI, on this the 23 day of January, 2017.

My Commission expires on the 18 day of August, 2018.

*Mary Hauser-Lamb*
NOTARY PUBLIC,
STATE-AT-LARGE, Kentucky

MARY HAUSER-LAMB
Notary Public
State at Large
Kentucky
My Commission Expires Aug 18, 2018

16

Respectfully submitted,


/s/ David Kaplan
DAVID S. KAPLAN
CASEY L. HINKLE
JAMES E. MCGHEE III

KAPLAN & PARTNERS LLP
710 W. Main St., 4th Floor
Louisville, Kentucky 40202
(502) 416-1630
(502) 540-8282 (facsimile)
dkaplan@kplouisville.com
chinkle@kplouisville.com
jmcghee@kplouisville.com
COUNSEL FOR PLAINTIFF